UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:12-CR-132 |
| | Hon. Robert Holmes Bell |
| Plaintiff(s), | |
| v. | DEFENDANT'S SENTENCING MEMORANDUM |
| D-25   JOE CABRERA, | |
| Defendant. | |

## DEFENDANT'S SENTENCING MEMORANDUM

Joe Cabrera, by and through his attorney, Haytham Faraj, submits the following sentencing memorandum setting forth his sentencing factors under 18 U.S.C. §3553 along with his request for applicable downward variances and departures for the court's consideration as follows.

## I. BACKGROUND

    *a.*    *The price of withdrawal from the Latin Kings and the conspiracy*

In 2009, Joe Cabrera made the most important and difficult decision of his life. He and his wife Janie packed up their three children and left Holland and the Latin Kings behind. They fled Holland within two days of Joe Cabrera leaving jail after serving a three months sentence he received after being ordered by Latin King leader to admit to a crime he did not commit.

He and Janie left behind the only life they had ever known. They left behind fathers and mothers, brothers and sisters, cousins and friends. They left behind family gatherings during the holidays, family barbeques on summer days in the park with kids running and playing. They left behind the security of a familiar place and the comfort of employment and a home. They left

1

Holland because Joe Cabrera decided to withdraw and cut ties with the Latin Kings, forever. His past would eventually come back to haunt him but in 2009 all he knew is that he needed to save himself and his family. Joe Cabrera would have to pay a dear price for withdrawing from the Latin Kings. It is a price that only a father can understand. He could not withdraw from the Latin Kings while remaining in Holland. Withdrawal meant that he had to also physically leave Holland. But leaving Holland meant he had to leave his two older boys behind. They could not join him because their mother lived in Holland. She would not agree to allow the boys to go with Joe and Janie. The price of withdrawal meant that he would have to separate from this sons. His two older boys and he enjoyed a close relationship. They were very much a part of each other's lives. But regardless of their close relationship, withdrawing from the Latin Kings and leaving Holland meant that the boys would have to remain behind. Their mother, rightfully, would not agree to allow them to leave. Joe Cabrera would have to pay a very dear price to withdraw from the Latin Kings. He had to leave his boys behind. Leaving them behind was the most difficult thing Joe Cabrera has ever undertaken. But he had no choice.

  b. *Life in Mississippi, church and the road to rehabilitation*

He and Janie and their two kids went to Mississippi. Mississippi was far enough away that no one would likely come after him. And his brother lived in Mississippi so it provided a promise of some family life. Mississippi embraced them. They found a new home and built a new life. Joe found employment and went right to work. He focused his energies on his marriage, his children and being a good father. They found a new church, the Church Road Church of Christ. Although he was raised Catholic, he was baptized into the Christian faith. The Church and the congregation became a substitute for the extended family they left behind. Joe participated in bible study, sought to establish a solid spiritual foundation and to become a better

man, husband and father. In 2010 Joe and Janie had their third child, a baby girl. They named her Nyah.

In 2011, Joe's brother moved to Florida to pursue employment. Janie wanted to have some family close by. They decided to move to Florida to remain close to family. They moved to Vero Beach Florida. Joe found a job. They found another Christian church and the fellowship from being part of a Church community. They stayed away from Holland but Joe made several trips to attend court proceedings related to the custody of his two sons. He would arrive in Holland and quickly leave. He never contacted any of the Latin Kings or met with any of the Latin Kings. He had permanently left that life behind. That all changed in early 2013.

  *c.*  *The past returns to haunt the future*

When the phone rang, Joe thought it was just another call from his Mom to check on them. But he could immediately tell by the tone of her voice that something was wrong. She told him that a Holland police officer came to see his father and told him that there is a warrant out on his son. Joe informed Janie and turned himself in to U.S. Marshals in Florida. It took about 45 days to bring him to Michigan. In March of 2013, he was arraigned and released on an unsecured bond. He asked the Court to allow him to remain in Florida on the condition that he return to Grand Rapids for his court dates. He was granted permission. When he returned to Florida, however, he had lost his job and his family was about to lose their home. After two months of fruitless searching for work and losing their home because they could no longer pay the rent, Joe and Janie moved back to Holland and moved in with his parents where they continue to reside today. Joe quickly found employment in Holland with the help of his dad who

3

works for the city of Holland.  He remains employed and has abided with all conditions of his release.

## II.     SENTENCING FACTORS UNDER 18 U.S.C. 3553

    *a. The nature and circumstances of the offense and history and characteristics of the Defendant supports a non-custodial sentence.*

Joe Cabrera was born in Holland.  He attended school in Holland.  And grew up into the Latin Kings in Holland.  Joe Cabrera grew up in a loving, healthy, caring family.  He cannot use his home life to justify any of his actions.  On the contrary, his family life, his parents in particular, were instrumental in him finding the moral compass to make the decision to leave the Latin Kings.  Nonetheless, his extended family and the close ties they enjoyed played a big role in him becoming a member of the Latin King.  The Latin Kings' influence was present during high school.  They were a tribe that afforded a young impressionable high school kid the promise of belonging, of camaraderie, of friendship and protection.  Joe Cabrera cannot point to a day when he joined the Latin Kings or a particular induction event.  It just happened.  One day he found himself a dues paying member.  The transition from a high school teenager to a gang member was seamless and effortless.  His older cousins, that were such a large part of his family life and who were members of the Latin Kings, continued to be his cousins after high school and remained a big part of his life but now he was also one of them, a Latin King.

Joe Cabrera engaged in a number of criminal acts that are alleged in the indictment.  During his proffer, he also admitted to acts that are not alleged.  He takes full responsibility for his actions.  He did that long before he was indicted, when he withdrew from the Latin Kings and moved to Mississippi where he was Baptized, turned to God and engaged in counseling with Pastor Brian Ayres.  Joe Cabrera began the journey to redemption and rehabilitation long before

4

any indictment, long before any federal investigation and long before the struggle to find mitigation evidence to persuade a court to be merciful.

      b. *Mr. Cabrera's strong family ties and his role as an active parent*

As evident by the letters and video submitted with this memorandum, Mr. Cabrera has strong family ties and values. He takes his role as a husband and father seriously. He endeavors to provide a positive role model for his 5 children and to be a positive force in their lives. He is able to do that because of the substantial lessons he has learned during the course of his young life. Mr. Cabrera, regardless of the sentence imposed by this court, will forever be a federal felon.

Our society denies such people substantial work opportunities, educational benefits and in many states the right to vote or bear arms. Mr. Cabrera has also served some time in State prison for some of the offense conduct in this case. That brief period of imprisonment lead to him realizing that his kids and wife must take priority in his life. As soon as he was released he moved his family away from Holland and the Latin Kings. He determined to provide his children a positive role model and to be a good husband to his wife. He also determined to seek counseling to be a better husband and to overcome his past transgressions. Those actions demonstrate that Mr. Cabrera has rehabilitated himself.

      c. *Mr. Cabrera has maintained regular employment since his voluntary withdrawal from the conspiracy.*

Mr. Cabrera has demonstrated extraordinary determination in ensuring he remains continuously employed. Since 2009 when he and his family moved to Mississippi he remained employed and provided for his family. He lost his job when he surrendered to federal authorities in early 2013. But soon after his release on bond, he found employment and has remained

employed.  He continues to support his family financially.  Incarceration will cost society substantially more than any societal reward from incarcerating Mr. Cabrera.

The cost of incarcerating and housing Mr. Cabrera and providing for his family when they become wards of the state, if he is incarcerated, substantially outweigh any benefit society will receive in return from incarcerating him.  Cabrera is already rehabilitated.  He withdrew from the conspiracy years before the investigation even commenced.  He took extraordinary steps to rehabilitate himself and to support his family financially and emotionally.  Society receive no benefit from a custodial sentence.  On the contrary, society will pay a substantial price to house Mr. Cabrera and care for his family without effectuating any of the principles of punishment our society recognizes, except perhaps retribution.  Mr. Cabrera is already rehabilitated.  He is already deterred. And the value of general deterrence is dubious under his circumstances, where the offender took permanent and substantial steps to self-rehabilitate.  Society, Mr. Cabrera's family, and Mr. Cabrera benefit more from Mr. Cabrera remaining employed so he can continue provide them support, to be a father, husband and to care for the welfare of his family.

### III. MR. CABRERA IS ELIGIBLE FOR VARIANCES AND DEPARTURES BASED ON HIS POST OFFENSE REHABILITATIVE EFFORTS HISTORY AND CONDUCT

*a. Mr. Cabrera should receive a downward departure for cooperation pursuant to §5K2.0.*

Mr. Cabrera has met with prosecutors and investigators every time they requested a meeting.  He has met with prosecutors on 4 occasions, two of those meetings took place after he entered a plea of guilty.  Although a departure is not warranted under Section 5K1.1 in the absence of a government motion, a court may consider cooperation that assisted the government

6

investigation under §5K2.0, even in the absence of government acknowledgement that the assistance was helpful. *U.S. v. Truman*, 304 F.3d 586, 591-2 (6th Cir. 2002).

In *Truman*, the district court judge believed that the cooperation provided by the Defendant went beyond "the garden variety acceptance of responsibility" contrary to the government's argument. The judge found that the Defendant's efforts were all the assistance that the Defendant could provide to federal and state authorities and departed downward. *Id*. at 92.

In this case, Mr. Cabrera was debriefed several times. He gave at least two debriefings each lasting several hours after he pled guilty, at least one was attended by both federal and state law enforcement officers. Clearly the post plea debriefs were more than for plea purposes since they took place after Mr. Cabrera pled guilty. While Mr. Cabrera's assistance may not have provided the type of cooperation the government desired since his information was dated and stale. That should not be held against Mr. Cabrera. He physically withdrew from the conspiracy in September of 2009 and mentally withdrew in the summer of 2009 when he was sentenced to a 90 day jail sentence after being ordered to take responsibility for a crime that he was not responsible for. The extent of his cooperation was limited by the fact that he ended his relationship with the Latin Kings and voluntarily withdrew from the conspiracy more than three years before the investigation began and nearly four years before the indictment. Mr. Cabrera's voluntary withdrawal should not limit his ability to receive credit for his cooperation or attempted cooperation.

> b. *Mr. Cabrera's withdrawal from the conspiracy in 2009 and post offense rehabilitation merits a variance and a non-custodial sentence.*
>> i. <u>Post-Offense self-rehabilitation supports a probationary sentence</u>

Joe Cabrera displaced his family and moved from Holland, Michigan to Mississippi to break contact with the Latin Kings and withdraw from the conspiracy. By doing so he began his journey to rehabilitation. Upon arriving in Mississippi, he found a job, found a church and commenced regular counseling and weekly bible study to make up for his past transgressions. The journey to self-rehabilitation began before an investigation had even commenced. Mr. Cabrera did it on his own, not out of an interest to demonstrate to the court that he is capable of rehabilitation but because he wanted to be a better husband, a better father and a law obeying member of society. In *gall v. United States*, withdrawal from a conspiracy years before the investigation commenced and self-rehabilitation by the defendant were found to be reasonable grounds for a sentence of probation. 552 U.S. 38, 56, 128 S. Ct. 586, 600, 169 L. Ed. 2d 445 (2007).

The Court in Gall rejected the government's argument suggesting that a probationary sentence creates unwarranted disparities and does not promote respect for the law. In affirming the district judge's sentence of probation the Court found that the trial judge's finding that Gall's voluntary withdrawal from the conspiracy and self-rehabilitation were sufficient grounds for a less severe sentence. *Id*. The Court also found that the trial judge did avoid unwarranted disparity by "avoid[ing] unwarranted similarities among co-conspirators who were not similarly situated. *Id*. The facts in Gall bear a striking resemblance to this case. Cabrera like Gall joined the conspiracy at a youthful age. Cabrera like Gall voluntarily withdrew from the conspiracy. And Cabrera like Gall has taken dramatic and permanent rehabilitative actions on his own. He has had not engaged in any misconduct since his voluntary withdrawal from the conspiracy. He gave up all use of illegal substances. He enrolled himself in counseling and became a regular

attending and active member of a local church in his community. He has maintained regular employment and devoted himself to his wife, his children and to becoming a law abiding citizen.

In *Gall* the Supreme Court found the trial court's reliance on Gall's "self-motivated rehabilitation, which was undertaken not at the direction of, or under supervision by, any court, but on his own initiative[]" to be reasonable and "lends strong support to the conclusion that imprisonment was not necessary to deter Gall from engaging in future criminal conduct or to protect the public from his future criminal acts." *Id*. at 602.

> ii. <u>A non-custodial sentence advances societal interests and public policy by encouraging self-rehabilitation</u>.

The dramatic voluntary steps taken by Mr. Cabrera to voluntarily withdraw from the conspiracy followed by the extraordinary steps of self-rehabilitation ought to be recognized as positive steps that advance society's best interests. The RICO conspiracy of the Holland Latin Kings clearly menaced the public and endangered the well-being and peaceful existence of people who became victims to it. The perpetrators should be punished. But as a society we must encourage self-correction and self-rehabilitation because deterrence alone does not work to end criminal conduct. Accordingly, while a custodial sentence generally serves the purpose of deterrence, in a case such as this where the offender has undertaken permanent and real steps to end all criminal actions, self-rehabilitated himself and is specifically deterred from further criminal conduct, a custodial sentence devalues the societal interests in having those who commence criminal actions from voluntarily ceasing misconduct and from engaging in self-rehabilitation.

> c. *Mr. Cabrera should receive a three months downward departure for the sentence served in State custody for the 2008 gun offense*.

In 2008 Mr. Cabrera pled guilty to possession of a firearm after he was ordered to tell State law enforcement officials that the gun was his. Mr. Cabrera was sentenced to three months in jail. He was released on September 27, 2009. Immediately after his release he left Holland and went Mississippi to start a new life with his wife and children. Note 4 to U.S.S.G. §5G1.3 allows a court to depart downward where the defendant has completed serving a term of imprisonment for the same offense conduct where if the defendant were serving a term of imprisonment at the time of sentencing he would have been eligible for a concurrent sentence. *See Ruggiano v. Reish*, 307 F.3d 121 (3rd Cir. 2002) (district court had authority under U.S.S.G. §5G1.3 to adjust a federal sentence to time served on a state sentence whether called a "departure" a "credit" or an "adjustment.")

## IV.     CONCLUSION

As the Court is well aware the purposes of sentencing are to: **(A)** reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; **(B)** to afford adequate deterrence to criminal conduct; **(C)** to protect the public from further crimes of the defendant; and **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C.A. § 3553 (West). While Mr. Cabrera has engaged in serious misconduct, his permanent voluntary withdrawal from the Latin Kings in 2009, years before the indictment and even the investigation, along with his extraordinary self-rehabilitation, employment history, lack of misconduct since his withdrawal, discontinuing all use of illegal substances and his commitment to being a good father and husband and connections to his church make him uniquely qualified for a non-custodial sentence.

WHEREFORE, Mr. Cabrera respectfully requests that this Honorable Court sentence him to a non-custodial sentence.

                                                Respectfully submitted,

Dated: May 28, 2014                          /s/ Haytham Faraj
                                                HAYTHAM FARAJ (P72581)
                                                Attorney for Defendant Cabrera
                                                6 Parklane Blvd, Suite 530
                                                Dearborn, MI 48126

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 28, 2014, I electronically filed the foregoing document with the Clerk of Court using the ECF system which will send notifications of such filing to all parties of record.


Dated: May 28, 2014                              /s/ Haytham Faraj  
                                                  Haytham Faraj  
                                                  Attorney for Defendant  
                                                  The Law Offices of Haytham Faraj, PLLC  
                                                  6 Parklane Blvd., Suite 530  
                                                  Dearborn, MI 48126  
                                                  (313) 436-1980  
                                                  Haytham@farajlaw.com